# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:15-cv-00283-MR

| | |
|---|---|
| WARREN HAYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 14].

## I. PROCEDURAL HISTORY

The Plaintiff Warren Hayes initially applied for a period of disability and disability insurance benefits on March 14, 2011, alleging an onset date of February 28, 2008.[1] [Transcript ("T.") 254]. The Plaintiff's claim was denied initially and on reconsideration. [T. 202, 203]. Upon the Plaintiff's request, a hearing was held on August 8, 2012, before Administrative Law Judge

---

[1] The Plaintiff subsequently amended his alleged onset date to March 1, 2011. [T. 14].

Alice Jordan ("ALJ Jordan"). On September 27, 2012, ALJ Jordan issued a decision denying the Plaintiff benefits. [T. 213-225]. Upon the Plaintiff's request for review, the Appeals Council remanded the case to ALJ Jordan for further consideration. [T. 230-34].

A second hearing was held on January 21, 2014, before ALJ Jordan. On June 5, 2014, the ALJ issued a decision denying the Plaintiff benefits. [T. 9-34]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-3]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by

substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show

3

any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id. In this case, the ALJ's determination was made at the fifth step.

## IV. THE ALJ'S DECISION

In denying the Plaintiff's claim, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2011, and that he has not engaged in substantial gainful activity since the amended alleged onset date of March 1, 2011. [T. 16]. The ALJ then found

that the medical evidence established that the Plaintiff has the following severe impairments: bipolar disorder; post-traumatic stress disorder; agoraphobia; panic disorder; and borderline personality disorder. [T. 16-17]. The ALJ determined that none of Plaintiff's impairments, either singly or in combination, met or equaled a listing. [T. 17-20]. The ALJ then assessed the Plaintiff's residual functional capacity (RFC) [T. 21-32], finding that the Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [A]void concentrated exposure to loud noises and hazards; have no more than occasional interaction with the public; have no more than frequent interaction with coworkers in [a] setting with probably a small number of coworkers that he would work with on a daily basis and be familiar with; perform unskilled, simple, repetitive, routine tasks; and not perform a pace-driven, production work. Also, I instructed the [vocational expert] to cite jobs at medium exertion and greater.

[T. 21]. Based on this RFC, the ALJ then determined that the Plaintiff could not perform any past relevant work. [T. 32]. The ALJ further concluded that, considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. [T. 32-33]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the amended alleged onset date through the date of her decision. [T. 34].

## V. DISCUSSION[2]

The Plaintiff presents two assignments of error. First, the Plaintiff argues that the ALJ improperly rejected the opinions of the consultative examiner, W. Jim Miller, Ph.D. Second, the Plaintiff argues that the ALJ failed to properly consider and evaluate the Plaintiff's consistently low Global Assessment of Functioning ("GAF") scores. The Court will address each of these arguments in turn.

### A. Dr. Miller's Opinions

The Plaintiff first argues that the ALJ erred in rejected the opinions of the consultative examiner, Dr. Miller.

In determining whether a claimant is disabled, the ALJ must consider any medical opinions in the record together with the other relevant evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). "Medical opinions" are statements from physicians, psychologists, and other acceptable medical sources, which reflect judgments about the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairment, and the claimant's physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1),

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

416.927(a)(2). In evaluating and weighing medical opinions, the ALJ must consider: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); see also 20 C.F.R. §§ 404.1527, 416.927. A treating source's opinion is entitled to "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In contrast, the opinion of a non-treating medical source, such as a consultative examiner, is not entitled to controlling weight. See generally SSR 96-2P, 1996 WL 374188, at *2 (July 2, 1996). Nevertheless, the ALJ may still give "great weight" to the opinion of a non-treating source and, under the proper circumstances, may even find that it is entitled to greater weight than that of a treating source. See id.

On May 4, 2011, Dr. Miller performed a consultative mental status evaluation of the Plaintiff. Dr. Miller reviewed the Plaintiff's social and work histories. During the evaluation, the Plaintiff reported that he had become nervous, had lost his will to live, and hated being around people, particularly

strangers. The Plaintiff reported having headaches and losing 50 pounds due to not eating. The Plaintiff also indicated that he had a bad childhood which he had "buried until he started to write an autobiography." [T. 395]. The Plaintiff discovered that he had been raped at age 13 and that his headaches started when he made that discovery. He also lived in an orphanage from age five to seven and had been molested by the orphanage housemother. The Plaintiff reported sleeping only two hours per night. He explained that sometimes he felt happy and then an hour later he would start crying uncontrollably. He further stated that he felt isolated and alone.

Dr. Miller inquired into post-traumatic stress disorder symptoms and noted that the Plaintiff had recurring nightmares, nervousness, jitteriness, and did not want to be around others. Dr. Miller noted that the Plaintiff appeared to be sad, depressed, and anxious. Dr. Miller indicated that the Plaintiff was trying to be a self-published writer but noted that he did not think the Plaintiff made any money writing. Dr. Miller found the Plaintiff to be quiet and polite, with deliberate and slowly paced speech. Dr. Miller indicated that the Plaintiff's thought process was inward-focused. He further noted that the Plaintiff was appropriately oriented with adequate memory and information. Dr. Miller indicated that the Plaintiff made an error with serial 7s and did not

recognize his error. Dr. Miller estimated that the Plaintiff was functioning in the bright average to superior range of intelligence.

Dr. Miller diagnosed the Plaintiff with bipolar disorder, NOS and post-traumatic stress disorder, chronic, but ruled out panic disorder with agoraphobia. He noted a current GAF score of 48. Dr. Miller stated that the Plaintiff's ability to understand instructions appeared to be fairly good but that his ability to retain instructions and to sustain attention were poor. He also opined that the Plaintiff's ability to tolerate the stress and pressure of day-to-day work activity was poor. Dr. Miller indicated that the Plaintiff's ability to relate to coworkers and supervisors was unknown. [T. 394-98].

In her decision, the ALJ gave Dr. Miller's opinions "some" weight but noted that she did "not agree with his opinion[s] that the claimant's ability to sustain attention is poor and that he is not able to tolerate the stress and pressure of day-to-day work activity." [T. 30]. To support this finding, the ALJ first noted that Dr. Miller's opinions were not entitled to controlling weight because he was not a treating source. [Id.]. While the ALJ was correct in not assigning Dr. Miller's opinions controlling weight, the fact that Dr. Miller performed a consultative examination did not justify the ALJ's rejection of his opinions. An ALJ may still give "great weight" to the opinion of a non-treating source if that weight is warranted by the evidence. See SSR 96-2P, 1996

9

WL 374188, at *2. Indeed, in her first decision the ALJ had given "significant weight" to the same opinions of Dr. Miller. [T. 223]. In her second decision, the ALJ acknowledged that Dr. Miller had "performed a comprehensive psychological exam" of the Plaintiff; that he was "a specialist in the area of claimant's impairments"; that he was "experienced in performing disability evaluations for Social Security"; and that "[f]or the period at issue, Dr. Miller's is the only comprehensive psychological/medical evaluation in the record." [T. 30]. The ALJ, however, discounted some of Dr. Miller's findings on the grounds that Dr. Miller's opinions "appear[ed] to be based more on the claimant's subjective complaints and not the objective mental exam and not on the longitudinal record" [T. 30]; that "the medical evidence of record [did] not support Dr. Miller's opinion" [T. 31]; and that Dr. Miller's opinion was "not consistent with the record as a whole." [Id.].

To support her finding that Dr. Miller's opinion appeared to be based more on the Plaintiff's subjective complaints and not the objective mental examination or the longitudinal record, the ALJ found that Dr. Miller's examination of the Plaintiff showed "less limitations than what Dr. Miller opined." [T. 31]. To support this finding, the ALJ noted that:

> Dr. Miller's mental exam showed: he was ***polite and quiet; speech was deliberate*** and slowly paced; thought process appeared inward-focused; indicated he had flashbacks and lucid dreams; was oriented;

10

> *was able to recite 5 digits forward and backward; recent and remote memory and information was intact; he performed simple multiplication*, but did not perform serial 7s correctly; ***abstract thinking and judgment was intact***; he had limited insight; and appeared to be functioning in the ***bright average to superior range of intelligence***. Further, Dr. Miller noted the following He was dressed casually and neatly. He appeared to be sad. He arrived on time for his appointment accompanied by 3 unidentified friends. He started writing 2 years prior. He was trying to be a self-publisher. He was living in the country with Paul and Samantha (1F). I find that this mental exam shows less limitations than what Dr. Miller opined.

[T. 30-31 (emphasis in original)[3]]. Significantly, however, the ALJ fails to explain how any of these findings are actually inconsistent with Dr. Miller's opinions regarding the Plaintiff's inability to handle stress and pressure or to retain instructions and maintain attention. Moreover, Dr. Miller's report includes positive objective observations sufficient to support his opinions. For example, Dr. Miller noted that the Plaintiff appeared to be sad, depressed, and anxious; that the Plaintiff's speech was deliberate and slowly paced and that his thought process was inward-focused; and that the Plaintiff made an error with serial 7s and did not recognize his error. These are not

---

[3] Throughout her decision, the ALJ made liberal use of bold and italics, presumably to emphasize those findings which she determined favored a finding on non-disability. The repeated use of such emphasis, however, is simply distracting and adds nothing to the ALJ's analysis.

11

subjective complaints but rather are objective observations of the Plaintiff's presentation by a health care professional. Therefore, the ALJ's statement that Dr. Miller's opinions were "based more on the claimant's subjective complaints and not the objective mental exam and not on the longitudinal record" [T. 30] is not supported by substantial evidence.

The ALJ also found that Dr. Miller's opinions were inconsistent with the record evidence stating, "Regarding social functioning, throughout the record, the claimant is able to go to the ER for various complaints, where mental exams are, on the whole, normal." [T. 31]. The ALJ then noted several ER visits where the Plaintiff's mental status was noted to be "normal." [Id.]. The ALJ's finding in this regard, however, is not supported by substantial evidence. First, Dr. Miller did not opine that the Plaintiff had problems with social functioning; indeed, Dr. Miller stated that the Plaintiff's ability to relate to coworkers and supervisors was "unknown." [T. 398]. Second, as a matter of common sense, the ability to go to an emergency room and communicate with doctors does not demonstrate an ability in social functioning that would translate to the social functioning required to perform work on a regular and consistent basis. Third, and most importantly, the majority of the Plaintiff's ER visits were for migraine headaches where no detailed psychological evaluation was performed. Thus, the fact that the ER

12

physician may have noted a "normal" mental examination does not constitute substantial evidence regarding the Plaintiff's social functioning.

The ALJ also cited select references in the Plaintiff's mental health treatment records as being inconsistent with Dr. Miller's opinions. For example, the ALJ noted that the Plaintiff reported in May 2012 that he was "doing rather well and was feeling more creative and doing more writing" and that "January, March, June, July, November, and December 2013 mental exams were normal in this respect." [T. 32]. These isolated references, however, do not support the ALJ's rejection of Dr. Miller's opinions. Even though the Plaintiff reported "doing well" during this time period, the record evidence also shows a worsening of symptoms. For example, while the Plaintiff reported that he was doing rather well and writing more in May 2012 [T. 449], by August 2012, the Plaintiff reported that he continued to have a good deal of panic and anxiety; that Buspar was not helping his symptoms; and that he was still struggling with depressive and anxious symptoms as well as a lack of sleep. His mental status at that time showed that his mood was dysphoric and his affect was flat. [T. 551]. Additionally, the Plaintiff's mental health records from this time period include consistently low GAF scores, which would appear to be inconsistent with these "normal" findings. [See T. 397, 428, 434, 451, 552, 561, 616, 621]. For these reasons, the

13

Court concludes that the ALJ's conclusion that Dr. Miller's opinions conflict with the Plaintiff's treatment records is not supported by substantial evidence.

The ALJ also relied on her personal observations of the Plaintiff to discount Dr. Miller's opinions, stating as follows: "Finally, at the two hearings, [the Plaintiff] provided detailed, responsive answers to questions using appropriate medical terms. His speech was spontaneous and logical with good grammar and vocabulary." [T. 31]. Such findings, however, are not in conflict with Dr. Miller's opinions. Dr. Miller estimated that the Plaintiff was functioning in the bright average to superior range of intelligence. [T. 397]. The Plaintiff's ability to speak and communicate well does not demonstrate an ability to sustain attention or to tolerate the stress and pressure of day-to-day work activity, and therefore the ALJ's observations in this regard do not support the rejection of Dr. Miller's opinions.

Finally, the ALJ indicated that Dr. Miller's opinions were "not consistent with the record as a whole." [T. 31]. To support this finding, the ALJ noted the Plaintiff's reported activities of daily living, including cooking and performing some household chores. Id. The ALJ, however, failed to explain how the Plaintiff's activities of daily living are inconsistent with Dr. Miller's opinions. While the Plaintiff reported being able to participate in some

activities around his home [T. 336, 344], the function reports reflect that the Plaintiff still had trouble with focusing, with finding things, and with remembering things [T. 338, 346], all of which would interfere with the ability to perform basic daily tasks.

For all of these reasons, the Court concludes that the ALJ erred in discounting Dr. Miller's opinions.

**B.  GAF Scores**

Next, the Plaintiff argues that the ALJ failed to properly consider and evaluate the Plaintiff's GAF scores.

"A GAF score represents a clinician's judgment of an individual's overall level of functioning." Kennedy v. Colvin, No. 3:14-CV-665-RJC, 2016 WL 890602, at *3 (W.D.N.C. Mar. 8, 2016) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV-TR") 32 (4th ed. text rev. 2000)).  "The GAF scale ranges from 0 to 100 based on psychological, social and occupational functioning on a hypothetical continuum of mental health illness." Powell v. Astrue, 927 F. Supp. 2d 267, 273 n.4 (W.D.N.C. 2013) (citing Am. Psychiatric Ass'n, DSM-IV-TR at 34). Id.[4]

---

[4] Although the fifth edition of the Diagnostic & Statistical Manual of Mental Disorders ("DSM-V") discontinued the use of GAF scoring in July 2013, the Social Security Administration has taken the position that it will continue to view a GAF rating from an

Here, the record contains a series of GAF scores dating from April 2011 through November 2013, where the Plaintiff consistently scored between 42 and 48. [See T. 428 (GAF score of 42); T. 434 (GAF score of 40-45); T. 397 (GAF score of 48); T. 451 (GAF score of 42); T. 552 (GAF score of 45); T. 561 (GAF score of 44); T. 616 (GAF score of 45); T. 621 (GAF score of 45)]. A GAF of 41-50 indicates that an individual has some serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to maintain employment). Am. Psychiatric Ass'n, DSM-IV-TR at 34. These GAF scores constitute medical opinions that the ALJ was required to consider. The ALJ, however, failed to consider them in any meaningful way, other than to state in a conclusory fashion that the GAF scores were given "probative weight" but were not "conclusive evidence" of disability.[5] [T. 32]. Without any meaningful

---

acceptable medical source as a medical opinion. See Kennedy, 2016 WL 890602, at *4 (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") and SSA, AM-13066, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication" (effective July 22, 2013)).

[5] The Court finds the ALJ's assignment of "probative weight" to be particularly puzzling, as GAF scores between 41-50 are commonly viewed as being consistent with severe symptoms and an inability to work. See Gordon v. Colvin, No. 1:15-cv-3736, 2016 WL 4578342, at *19 (D.S.C. Aug. 3, 2016) (noting that a GAF score of 41-50 indicates serious symptoms or a serious impairment in social or occupational functioning). Despite finding these GAF scores to be "probative," the ALJ ultimately determined that the Plaintiff was not disabled. The ALJ fails to explain exactly what, then, these scores are probative of.

discussion or explanation regarding the treatment of these GAF scores, the Court is compelled to conclude that the ALJ's decision is not supported by substantial evidence and that a remand is required.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED**, and the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 7, 2017

Martin Reidinger
United States District Judge